# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ALAN SAUNDERS,**

      **Plaintiff,**

**v.**                               **Civil Action No. 3:18cv643**

**ANDREW M. SAUL**,
*Commissioner of*
*Social Security Administration*,

      **Defendant.**

## <u>MEMORANDUM OPINION</u>

Plaintiff Alan Saunders challenges the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Social Security Disability after finding he lacked disability. This matter comes before the Court on the Report and Recommendation ("R&R") prepared by the Honorable David J. Novak, then–United States Magistrate Judge, (ECF No. 12), addressing the parties' cross-motions for summary judgment, (Pl.'s Mot. Summ. J., ECF No. 9; Def.'s Mot. Summ. J., ECF No. 11). The R&R recommends that this Court deny Saunders's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and uphold the final decision of the Commissioner. Saunders objects to the R&R (the "Objection"). (Pl.'s Obj. R&R, ECF No. 13.) The Commissioner responded to Saunders's Objection. (Def.'s Resp., ECF No. 14.) The Court exercises jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[1]

---

[1] Section 405(g) provides in relevant part, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he [or she] was a party . . .

For the reasons articulated below, the Court will sustain Saunders's Objection. Accordingly, the Court will grant in part Saunders's Motion for Summary Judgment, deny the Commissioner's Motion for Summary Judgment, and remand this matter to the Commissioner for proceedings consistent with this Memorandum Opinion. The Court denies at this procedural posture Saunders's request to remand solely for the purpose of awarding benefits.

## I. BACKGROUND

The instant case involves Saunders's claim for Social Security Disability Benefits under the Social Security Act, alleging disability from lumbar degenerative disease and migraines, with an amended alleged onset date of November 22, 2015. (R. 15, 203–04, 244–50, 266.) On March 23, 2018, an Administrative Law Judge ("ALJ") issued a written opinion finding that Saunders had the Residual Functional Capacity ("RFC") to perform work "at a light level of exertion" and the capability of performing his past relevant work as an investigator, school administrator, and administrative management officer, meaning that he did not qualify for disability benefits. (R. 15–27.) For purposes of this appeal, the Court summarizes the relevant portions of the record and the ALJ's opinion concerning Saunders's RFC and his ability to work on a continuing basis. *See* SSR 96-8p, 1996 WL 374184, at *1, *7 (footnote omitted) (defining "regular and continuing basis" as eight hours per day for five days per week, or an equivalent work schedule).

### A.  **Saunders's Description of his Disability and Corresponding Medical Records**

Saunders, currently 59-years-old, filed in 2017 an application for disability benefits, alleging that he "struggle[s] to perform the simplest of tasks—from dressing myself, to sleeping,

may obtain a review of such decision by a civil action . . . in [a] district court." 42 U.S.C. § 405(g). Section 1383(c)(3) confirms that "[t]he final determination of the Commissioner after . . . a hearing . . . shall be subject to judicial review as provided in section 405(g)." 42 U.S.C. § 1383(c)(3).

to maintaining my home and property, and maintaining social relationships." (R. 245.) Saunders bases his disability claim on "recurrent episodes of acute, incapacitating lumbar pain and sacroiliac dysfunction" that occur "several times per year and can last weeks at a time," leaving him unable to perform basic tasks during those periods. (R. 245.) Because of his physical decline and related pain, Saunders sold his home and moved into an apartment during the relevant time period. (R. 44, 245.)

Saunders's medical records documented these pain episodes. Briefly, Saunders's records reflect that he sought frequent treatment for back pain from a number of providers, ranging from injections, radiofrequency ablation, surgery, chiropractic care, medication, and physical therapy. On June 7, 2016, for example, Dr. J. Michael Simpson of Tuckahoe Orthopedics stated that Saunders had a "more recent exacerbation of pain spasm which really put him down for a month or so." (R. 352.) One month later, on July 18, 2016, Saunders sought care at Fort Belvoir Community Hospital, reporting "increas[ing] episodes of pain with longer duration." (R. 668.) Two months later, on September 7, 2016, Saunders presented for a return consultation at Fort Belvoir Community Hospital, seeking help for back pain that he again claimed affected his activities and daily living. (R. 661.)

Between September 21, 2016 and December 21, 2016, Saunders also sought treatment at the Virginia Spine Institute. (R. 415, 422, 425, 430.) Saunders's medical doctor at that location observed that medication, injections, physical therapy, and radiofrequency ablation did not remedy Saunders's back pain. (R. 430 (doctor observing "patient has also failed medication, PT, RFA for the SI joint multiple times, multiple injections including SI joint and epidurals," "has also clearly failed time, rest, ice, and activity modification," and noting Saunders has "grown

quite frustrated with his symptoms and their daily effect on his life").)[2]  As a result, Saunders

sought care at the National Spine and Pain Center.  (*See* R. 1035–53.)  In December 2016, a

discography procedure revealed degenerative changes in Saunders's spine.  (R. 416–18.)

Although his healthcare providers recommended surgical treatment, Saunders declined such

treatment because he had seen the surgical procedure produce mixed results.  (R. 50–52, 423.)

Instead, Saunders received two joint block injections to reduce his pain, but the relief that the

injections provided lasted only twenty-three days.  (R. 425.)  In December 2016 and January

2017, two independent physicians observed that Saunders's medical treatment provided him only

temporary relief and recommended more invasive procedures, including surgery.  (R. 638, 1037–

38.)

 Saunders continued undergoing treatment and injections to moderate his back pain.

(R. 1064, 1276.)  During the six month period between May 22, 2017 and December 20, 2017,

Saunders presented at Dynamic Rehab and Spine, LLC twenty-three times.  (R. 1133–80.)  At

those appointments, Saunders generally ranked his back pain between five and seven on a scale

of ten, though he twice ranked his pain as high as ten out of ten and occasionally as low as four

out of ten within that six-month period.  (*Id.*)  To ease his back pain, in February 2017, Saunders

underwent a radiofrequency ablation procedure.  (R. 911, 1030.)  Thereafter, on two separate

occasions in June 2017 and August 2017, he received more injections for his back pain.  (R.

1030, 1064, 1276.)  During an appointment at Fort Belvoir Community Hospital on December

---

[2] "RFA" refers to radiofrequency ablation, a procedure that generally involves local anesthesia and heating or burning nerves to relieve pain, which may provide pain relief for six to twelve months.  *See* Cleveland Clinic, Radiofrequency Ablation, *available at*: https://my.clevelandclinic.org/health/treatments/17411-radiofrequency-ablation.  "SI" refers to the sacroiliac joint, meaning the joint between the sacrum and ilium bones of the pelvis.  *Davis v. ReliaStar Life Ins. Co.*, 665 F. Supp. 2d 1369, 1372 n.5 (N.D. Ga. 2009).

28, 2017, Saunders informed the medical doctor that the injections and physical therapy proved "modestly effective," though he had decided to consider joint fusion surgery. (R. 1244–45.) The doctor at Fort Belvoir also recorded that Saunders had explained that his back pain consisted of "occasional flares that can run from incapacitating to modestly limiting; the pain affects activities of daily living, [and] the pain is aggravated by strenuous activity." (R. 1244.)

B. **Testimony Presented During the Hearing on Saunders's Claim**

The ALJ held a hearing prior to rendering her written opinion about Saunders's disability claim. (R. 33–83.) During that hearing, Saunders testified that "after a particularly severe round of acute lumbar episodes [including] the usual lumbar spine injections . . . [he] sold [his] house" because maintaining his property only exacerbated his back pain. (R. 44.) Saunders explained that he was contracting out things he used to enjoy, such as mowing the grass, and that he had to get rid of those physical chores because of the resulting harm. (R. 44.) Saunders further stated that during "any kind of a back episode, which occurs anywhere . . . I won't bend, lift, or twist, meaning I won't pick up anything. If it falls on the floor, that's where it stays." (R. 45.) Saunders explained to the ALJ that he could go "from a fairly functional individual, during the course of a night's sleep, to my back giving me trouble, which will kick in a cycle of chiropractic visits, which I do two or three times a month, to steroid injections, which I do periodically, to a host of other things that I have to do to manage my back." (R. 48.) And on a "bad day," Saunders testified that he will not leave his apartment or his sofa. (R. 49.)

Saunders further testified that he had more good days than bad. (R. 48.) Saunders stated that he did not do laundry, did not go to the grocery store, and did no more cooking than "crack[ing] an egg into a frying pain." (R. 68.) Saunders also stated that "part of this is on me to

stay in as good physical condition as I possibly can, given the limitations that are placed upon me."[3]  (R. 52.)

Toward the end of the hearing, the ALJ asked the vocational expert, among other things, whether an individual

> of the same age, education, and past relevant work as [Saunders who] would be off task 15 percent of the day in addition to regular breaks, due to pain and side effects of medications and this individual would also have unscheduled absences two days or more per month.  Would there be any work available in the national economy for this individual?

(R. 80–81.)  The vocational expert answered no.  (R. 81.)

### C.  The ALJ's Written Decision Denying Saunders Benefits

In the opinion below, the ALJ summarized Saunders's medical history before rendering a decision.  The ALJ described that Saunders generally functions well, and that he can "perform numerous robust activities of daily living per hearing testimony, adult function reports, and the medical evidence of record."  (R. 25.)

When evaluating Saunders's RFC, the ALJ acknowledged that during the hearing, Saunders "testified that he was unable to work due to the following impairments:  degenerative discs, sacroiliac dysfunction, and migraine headaches as well as symptoms of sleep disturbance, memory problems, difficulties with focus and concentration, moodiness, and dislike of crowds."  (R. 20.)  The ALJ acknowledged Saunders's "100 percent total and permanent service-connected disability by the Veterans Administration."[4]  (*Id*.)  The ALJ mentioned that Saunders experiences

---

[3]  Saunders acknowledged that he could pursue more aggressive treatment, such as surgery or opioids for pain management, (R. 50), but explained that he was reluctant to do so because "[y]ou can go in and get a pile of opiates, which leads to problems that I choose to avoid."  (R. 41.)

[4] Saunders served in the Army from 1984 until his retirement in 2011, as a "fully fit Airborne, Air Assault, and Ranger qualified combat Infantry officer."  (R. 245).  The Veterans

migraine headaches "three to four times a month and a headache at least one day per week."

(R. 20.)  Also in the written opinion, the ALJ noted Saunders's "degenerative discs and sacroiliac

dysfunction for which he gets injections, uses a chiropractic services [sic] and TENS unit,[5] and

takes medications."  (R. 21.)  While the ALJ summarized Saunders's back problems, she did not

mention the overall frequency of the injections, chiropractic services, medications, nor discuss

how often Saunders sought pain management for his back.  (R. 21.)  The ALJ further remarked

on Saunders's progress notes, which among other things, revealed a "good prognosis . . . mild

pain, mild left shoulder functional limitations, mild strength limitations, and [that] he should

progress well with RTC and scapular strengthening," after he sustained a biceps tendon rupture

in February 2016.  (R. 22, 701.)

The ALJ also reviewed Saunders's National Spine and Pain Centers records, observing

that during the period at issue, Saunders "was provided epidural steroid injections, physical

therapy, chiropractic treatment, massage, acupuncture," and medication.  (R. 23.)  The ALJ

considered the opinions of two state agency medical consultants, which suggested that Saunders

"had the residual functional capacity to perform work related activities at a light level of

exertion," and found that the "evidence . . . depicts even greater limitations due to the claimant's

musculoskeletal issues and migraines."  (R. 23.)

Additionally, the ALJ recognized that the applicable regulations require the Social

Security Administration to consider decisions from other agencies, such as the Veterans

_____

Law Judge made a finding a fact that "[f]rom May 31, 2016, symptoms of [Saunders's] lumbar
spine disability have more nearly approximated incapacitating episodes having a total duration of
at least 6 weeks during the past 12 months."  (R. 211.)

[5] A TENS (transcutaneous electrical nerve stimulation) unit provides electrical pulses to
the lower back to relieve pain.  *McMurtry v. Astrue*, 749 F. Supp. 2d 875, 879 (E.D. Wis. 2010).

Administration Agency. (R. 24.) The ALJ remarked that, pursuant to *Bird v. Commissioner of the Social Security Administration*, the United States Court of Appeals for the Fourth Circuit "stated that such decisions deserve substantial weight unless there are good reasons for giving them less weight."[6] (R. 24.) The ALJ accorded "little weight" to the Veterans Administration decision rating Saunders one hundred percent disabled because the ALJ found that rating inconsistent with the record. (R. 24.)

The ALJ summarized that "the evidence shows that [Saunders] has physical limitations in his ability to perform work-related activities, but that he remains able to work at a light level of exertion." (R. 26.) To support this conclusion, the ALJ stated that she afforded "significant weight to the physical assessments" of one state agency medical consultant, and "partial weight" to the assessment by the other state agency medical consultant. (R. 26.) Additionally, the ALJ assigned "little weight" to the Veterans Administration disability decision and the opinion of Christine F. Lettieri, M.D., who provided multiple medical source statements for Saunders. (R. 23, 26.) The ALJ did not assign a weight to Saunders's testimony but found his statements "not entirely consistent with the medical evidence" in the record. (R. 24–25.) After the Appeals Council denied Saunders's administrative appeal, he sought review in this Court.

---

[6] In *Bird*, the Fourth Circuit held that

in making a disability determination, the SSA must give substantial weight to a [Veterans Administration] disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a [Veterans Administration] disability rating when the record before the ALJ *clearly demonstrates* that such a deviation is appropriate.

699 F.3d 337, 343 (4th Cir. 2012) (emphasis added).

### D.  **Proceedings on Appeal in the District Court**

In his Motion for Summary Judgment, Saunders contended that the ALJ applied the wrong legal standard to evaluate the nature of his treatment and improperly characterized such treatment as "conservative" while overlooking his debilitating episodes of pain.  (Pl's Mem. Supp. Mot. Summ. J. 9–12, ECF No. 10.)  Saunders further argued that the ALJ erred because she did not "explain how his [robust] activities belie the frequency and duration of Saunders['s] episodes of exacerbated pain."  (*Id.* 13.)  Finally, Saunders asserted that the ALJ employed the wrong standard under Fourth Circuit precedent set forth in *Bird v. Commissioner of Social Security Administration* to his Veterans Administration disability rating.  (*Id.* 16.)

In the R&R, the magistrate judge agreed that the ALJ applied the wrong standard pursuant to *Bird* but found the error harmless.  (R&R 31–36.)  The magistrate judge recommended that "no harm resulted from the ALJ's misstatement of [law] because, in accordance with *Bird*, the ALJ explained why the record demonstrated that the [Veterans Administration] rating deserved less-than-substantial weight."  (R&R 35.)  The R&R noted that when discussing *Bird*, the ALJ opined that the Veterans Administration determination conflicted with Saunders's reported daily activities, which the ALJ characterized as "robust," implying that his daily activities outweighed any claim regarding Saunders's claims of acute pain episodes.  (R&R 35.)

As to Saunders's claim of error that his level of treatment does not speak to the frequency with which he experiences debilitating episodes of pain, the R&R found that "because the ALJ properly considered the consistency between [Saunders's] subjective complaints and his course of treatment, and because substantial evidence supports the ALJ's characterization of that treatment as conservative, the ALJ did not err."  (R&R 19.)

Regarding Saunders's contention that the ALJ did not reconcile his ability to function throughout one month or a year without a debilitating pain episode, the R&R found that "the ALJ's detailed observations demonstrate that she considered both the type and the extent of [Saunders's] daily activities in accordance with the relevant regulations and caselaw." (R&R 20.) The R&R further recommended that the ALJ "could reasonably conclude that [Saunders] did not suffer from the level of limitation that he endorsed." (R&R 25–26.) The R&R found that "the ALJ's conclusion that [Saunders's] RFC adequately accounted for his limitations includes an *implied* finding that [Saunders] could work a full day despite any episodes of exacerbated pain." (R&R 27 (emphasis added).) The R&R concluded that "[u]ltimately, because the ALJ considered the entire record and properly noted the inconsistencies between the record and [Saunders's] subjective complaints, including his alleged periods of exacerbated pain, the Court finds that the ALJ did not err in assessing [his] credibility." (R&R 31.)

In the Objection, Saunders asserts that the ALJ and the Magistrate Judge erred because they overlooked that Saunders "consistently experiences large blocks of time when he is in the throes of an exacerbation of his back pain," rendering him "not functional." (Pl.'s Obj. 1, ECF No. 13.) Saunders contends that "[w]hat is completely missing from the ALJ's decision and the R&R's assessment is the recognition that all modalities of treatment proved to provide only temporary relief; i.e., that Saunders had to repeatedly return to those modalities over and over again." (*Id*. 4.) Saunders points to "the Veteran's Administration determination that [he] is unable to work" and argues that the R&R did not fully acknowledge that the ALJ applied an incorrect standard of law resulting in more than harmless error. (*Id*. 6.) Saunders asks this Court to reverse the ALJ's decision because his "inability to work is based on intermittent, debilitating

episodes of pain caused by his well-documented, objectively supported back condition." (*Id.* 6–7.) Thus, Saunders says, the ALJ "was unable to see Saunders's situation as a whole." (*Id.* 7.)

In response, the Commissioner argues that "substantial evidence supports the ALJ's implicit finding – through assessing an RFC – that [Saunders] could sustain work-related functions despite periods of exacerbated pain." (Resp. 4, ECF No. 14.) The Commissioner further asserts that Saunders asks this court to "reweigh the *facts* and decide the case differently, which is expressly impermissible under the substantial evidence standard of review." (*Id.* 5–6.) (emphasis in original).

## II.  STANDARD OF REVIEW

### A.  Appellate Standard of Review

This Court reviews *de novo* any part of the magistrate judge's R&R to which a party has properly objected.  28 U.S.C. § 636(b)(1)(C);[7] Fed. R. Civ. P. 72(b)(3).[8]  In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Judicial review of a final decision regarding disability benefits requires that this Court "'uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'"  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

---

[7] The subsection provides:  "The magistrate judge shall file his [or her] proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties."  28 U.S.C. § 636(b)(1)(C).

[8] The rule provides that, in resolving objections, "[t]he district court must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). Substantial evidence requires "more than a mere scintilla of evidence but less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (quoting *Hancock*, 667 F.3d at 472).

It is well-settled that "the [ALJ] must indicate explicitly that all relevant evidence has been weighed and [explain] its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (accord); *see also Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997) (in the Black Lung context, holding that the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence when evaluating whether substantial evidence supports the agency's decision). The court may find remand appropriate when an ALJ's decision fails to provide enough information to enable the court to determine whether substantial evidence supports the decision. *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015) (remanding because ALJ failed to explain how he decided to credit some of the claimant's statements and discount others).

Still, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). The touchstone for determining what evidence must be addressed is whether the evidence is so material that failing to address it would prevent the court from determining if the ALJ's decision was supported by substantial evidence. *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is

not required to discuss every piece of evidence, but if he [or she] does not mention material evidence, the court cannot say his determination was supported by substantial evidence.").

If substantial evidence does not support the ALJ's decision, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)).

## B. Evidentiary Standards for Pain

The evidentiary requirements for allegations of pain are further explained in the Social Security regulations and case law. By itself, a subjective allegation of pain does not provide "conclusive evidence of disability." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). But "where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the [ALJ], and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Id.* (citations omitted).

The applicable regulations set forth a two-step process for evaluating pain: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). "Therefore, for the pain to be found disabling, there *must* be shown a medically determinable impairment which could reasonably be

expected to cause not just pain, or some pain, or pain of some severity, but *the pain the claimant alleges [he or] she suffers*." *Id.* (emphasis in original).

After a claimant has satisfied step one by showing through objective medical evidence a medical impairment reasonably likely to cause the pain claimed, the ALJ must evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects his or her ability to work. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Pursuant to the regulations,

> this evaluation must take into account not only the claimant's statements about [his or] her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Craig*, 76 F.3d at 595 (internal quotation marks and citations omitted). "In so doing, the ALJ must assess the credibility of the claimant's statements about symptoms and their functional effects." *Brown*, 873 F.3d at 255; *see also* Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

### C. <u>Determining Eligibility for Benefits</u>

Because this case involves a decision determining eligibility for benefits, the Court reviews "whether the ALJ's finding . . . was reached based upon the correct application of the relevant law." *Craig*, 76 F.3d at 589 (citing *Coffman*, 829 F.2d at 517). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see* 20 C.F.R. §§ 416.920(a)(4), 404.1520.

In step one, the "ALJ asks . . . whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). The second step of the five-step sequential analysis requires that the factfinder decide whether the claimant suffers from a "severe" impairment, irrespective of age, education, and work experience. 20 C.F.R. §§ 404.1520(c) & 416.920(c).[9] If the claimant does not have a severe impairment under this definition, the ALJ typically will deny the claim without proceeding through the remainder of the sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the ALJ must decide whether the medical impairment meets or equals an impairment listed in the regulations. *Mascio*, 780 F.3d at 634. "Satisfying step 3 warrants an automatic finding of disability, and relieves the decision maker from proceeding to steps 4 and 5." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520(d)).

"If the claimant satisfies steps 1 and 2, but not step 3, then the decision maker must determine the claimant's residual functional capacity, that is, an evaluation of [his or] her ability to perform work despite [his or] her limitations ('RFC assessment')." *Id.* (citing 20 C.F.R. § 404.1520(e)). "The Administration has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22,

---

[9] The Commissioner has issued regulations that define the scope of the term "severe impairment":

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(c) & 416.920(c).

2019). A claimant's RFC assessment considers his or her capacity to perform sustained physical and mental activities on a regular and continuous basis, in spite of his or her limitations. *See* SSR 96-8p (policy interpretation for assessing RFC).

To formulate the RFC, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work." *Thomas*, 916 F.3d at 311 (internal quotation marks and alterations omitted). Many jobs require the ability to keep to an eight–hour a day, five–days per week schedule without accumulating too many absences. It therefore constitutes a factor in determining a claimant's RFC. SSR 96–8P ("A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule); *see also Totten v. Califano*, 624 F.2d 10, 11–12 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act, otherwise, the ability to perform substantial gainful activity even one day each month or each year would disqualify an individual for benefits."); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978) ("The ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in substantial gainful activity."). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.

After conducting the RFC assessment, the ALJ proceeds to step four and considers whether the claimant could continue performing the work that he or she did in the past; if not, the ALJ moves on to step five. *See Patterson*, 846 F.3d at 659; *see also* 20 C.F.R.

§ 404.1520(a)(4)(iv) (noting step four considers "past relevant work"). "At step five, the ALJ determines whether the claimant—given [his or] her RFC, [his or] her age, [his or] her education, and [his or] her prior work experience—can do any other work that 'exists in significant numbers in the national economy.'" *Thomas*, 916 F.3d at 310 (quoting 20 C.F.R. § 416.960(c)(2)).

If, at any step of the analysis, the ALJ determines that the claimant is not disabled, the inquiry must stop and the ALJ must deny the claim. 20 C.F.R. § 404.1520(a)(4). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas*, 916 F.3d at 310.

## III. ANALYSIS

In the Objection, Saunders argues that "[t]he entire sum and substance of [his] claim of disability lies in his assertion from the very outset of his claim that he . . . consistently experiences large blocks of time when he is in the throes of an exacerbation of his back pain and is not functional." (Pl.'s Obj. 1.) Saunders challenges the ALJ's determination that he does not qualify as disabled, asserting that "there is no citation or reference to any substantial, specific evidence that would show that" Saunders's claims regarding his debilitating pain episodes are untrue. (Pl.'s Obj. 4.) Accordingly, this Court limits its analysis to the evidence concerning Saunders's debilitating pain episodes and his ability to work on a continuing basis. *See United States v. George*, 971 F.2d 1113, 1117 (4th Cir. 1992) ("[T]he court . . . shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." (citation and quotation marks omitted)).

This Court must uphold the Commissioner's decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and, (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g). Because the Commissioner (1) overlooked material

evidence regarding Saunders's claim of disability, drawing into question whether substantial evidence supports the ALJ's factual findings and limiting this Court's ability to conduct a proper review; and, (2) misapplied the proper legal standard as set forth in *Bird*, the Court will sustain Saunders's objection, reject the R&R, and remand this case to the Commissioner for further consideration.

### A. The ALJ Overlooked Relevant Evidence Concerning Saunders's Ability to Function on a Regular Basis, Requiring Remand to Determine Whether Saunders can Sustain Work-Related Functions Despite Extended Periods of Exacerbated Pain

On *de novo* review, the Court concludes that the ALJ failed to mention relevant evidence regarding Saunders's periods of debilitating pain, meaning the Court cannot determine on appeal whether the ALJ discounted such evidence or overlooked it. Specifically, Saunders testified that his pain fluctuated and at times became too severe to enable him to keep a regular work schedule; the ALJ disagreed, opining that Saunders's daily activities belied his complaint. While it is true that the activities the ALJ listed comport with the lifestyle of a relatively healthy individual, she did not list or discuss the impact of the recurring pain episodes that Saunders described.

To be sure, the record shows Saunders generally functions well, performs simple tasks, engages in light cooking, and manages to take care of his own personal needs. The ALJ, in weighing his pain testimony, wrote that Saunders's "limitations mildly restrict his daily activities." (R. 25.) The ALJ lists some of the activities in which Saunders had engaged, including once pushing a snow blower during the relevant timeframe (which caused him great pain), exercising, walking on a treadmill, watching over four hours of television per day, driving, paying bills, and volunteering. (R. 25.) None of this contradicts his statements about being in extreme, though fluctuating, pain. In fact, Saunders testified that he performs these activities

only when not in debilitating pain, that he sold his house because he could no longer maintain due to the pain routine chores caused him, that he cannot get off the sofa during a pain episode and that he must rely on others to help with grocery shopping, laundry, and cooking more than an egg in a frying pan.

The ALJ also found probative the fact that Saunders goes to the gym, gets on the treadmill for thirty minutes, showers, bathes, dresses, and performs online shopping, finding that "[s]uch activities are inconsistent with disability." (R. 26.) Again, that summary of activities does not reflect all of Saunders's testimony. Saunders qualified his testimony and written statements by explaining that when his back allows, he performs such tasks. (R. 49, 245.) He also testified that he cannot sit for long periods of time and likes to get up and move around every twenty to thirty minutes, (R. 71), that he never "pick[s] up anything off the floor" because he puts himself "at risk of a back problem," (R. 45), and requires frequent medical intervention to moderate his pain, (R. 49). Saunders explained that his spine surgeon taught him not to bend, lift, or twist because such actions cause problems. (R. 46.) Saunders further explained in his testimony and written statements that when he experiences too much pain he cannot leave his apartment or otherwise function.

Here, the ALJ did more than simply weigh the evidence; she recharacterized it. Saunders's account of his daily life is, in essence, the story of attempting to function through severe, fluctuating pain. Saunders offered the aspects of his life on which the ALJ relied to refute his pain testimony to demonstrate the accommodations that his pain have forced him to make, such as selling his house, limiting his movements and exercise, and relying on others for help with chores. Moreover, a review of the various reports in Saunders's record show that he has been remarkably consistent in his complaints and active in seeking help for them. Although

the ALJ found Saunders's testimony regarding his impairments "not entirely consistent with the medical evidence and other evidence in the record," (R. 24–25), she cited nothing in the record that draws into question Saunders's credibility.[10] *See, e.g.*, *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the [ALJ], and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence.").

Credible medical evidence exists documenting Saunders's struggles with daily activities because of his lumbar degenerative disease and migraines. The ALJ said that while Saunders has "significant impairments including migraines and musculoskeletal issues with residual pain . . . the degree of limitation is not supported in the record. [Saunders] has not had the level of treatment one would expect for a disabled individual." (R. 24.) In doing so, the ALJ essentially penalizes Saunders for making an effort to cope with his pain, maintain more than sedentary lifestyle, and engage in social events.[11] *See Forquer v. Colvin*, No. 1:15CV57, 2016 WL

_____

[10] Saunders's treating sources consistently remarked that Saunders's pain affected his daily activities and lifestyle, and none of them questioned Saunders's credibility with respect to the intensity and frequency of his pain. Other details in the record could speak to Saunders's credibility. He has consistently and actively sought help and treatment for his ailments. He was cooperative with his doctors and forthcoming at his hearing before the ALJ. The ALJ, however, did not discuss Saunders's credibility or uniformity in seeking pain treatment in the written opinion, but rather stated that his statements were "not entirely consistent" with the record. (R. 24–25.) *See, e.g.*, SSR 16-3 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.")

[11] Congress did not design the Social Security System to provide a disincentive for disabled individuals to struggle to improve and function. For instance, the regulations preclude an individual from receiving benefits if a medical improvement in his or her condition allows

4250364, at *6 (N.D.W. Va. Aug. 11, 2016) ("Of course, an ALJ cannot succumb to the temptation to play doctor and make his [or her] own medical assessment."). Saunders himself acknowledged that his doctors recommended more aggressive treatment, such as surgery or opioids for pain management, (R. 50), but he testified that he was reluctant to pursue surgery because it had mixed results and opioids "lead to problems that I choose to avoid." (R. 41). *Cf. Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) (recognizing that the ALJ should not automatically penalize a claimant for electing conservative treatment because "there may be any number of reasons for a physician to prescribe a 'conservative' course of treatment, and it is for that reason that such treatment alone would not necessarily render a claimant ineligible for disability benefits"). The ALJ should not construe the evidence against Saunders simply because he sought less than the most aggressive treatments and because he refused to risk the hazards of opiates or surgery.[12]

---

him or her to engage in substantial gainful activity. *See* 42 U.S.C. §§ 423(f), 1382c(4)(A). A "medical improvement" means "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b). This recognizes that medical conditions are not static; rather such conditions can change over time and may include periods of fluctuating pain.

[12] The R&R stated that "[n]either the regulations nor the caselaw require the ALJs to explicitly consider a claimant's alleged periods of exacerbated pain when the ALJ's analysis has already found, and adequately explained, that the claimant's subjective complaints of pain prove inconsistent with the record." (R&R 26.) The R&R concluded that the ALJ considered the relevant evidence because the "ALJ cited to [Saunders's] activities of daily living, including reading, exercising, golfing, cooking and volunteering," before finding that he could sustain work-related functions. (R&R 28.) But the R&R does not explain how the ALJ accounted for and reconciled Saunders's inability to function during a pain episode, apart from concluding that the ALJ *implicitly* rejected Saunders's assertions that he could not work on a continuing basis and then undertaking its own recitation of the evidence to bolster the ALJ's conclusion. (*See* R&R 20–21, 26–27.) Considering the evidence in the record that speaks to Saunders's consistent allegations of debilitating pain episodes during the relevant period, together with the misapplication of the *Bird* standard as discussed below, the Court respectfully disagrees with the R&R's conclusion that the ALJ did not err.

As stated above, this Court must not weigh the evidence, as it lacks authority to substitute its judgment for that of the Commissioner, provided substantial evidence supports that decision. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). But when assessing whether substantial evidence supports the ALJ's decision, the Court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and his or her rationale in crediting evidence. *See Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 437 (W.D. Va. 2013) ("Furthermore, ALJs have a duty to analyze all of the relevant evidence and to provide a sufficient explanation for their rationale in crediting certain evidence.") (citation omitted). Because the Court finds it unclear how the ALJ reached her conclusion regarding the evidence relevant to Saunders's fluctuating and debilitating pain episodes as described in the record, the Court will sustain Saunders's Objection.

In sum, the Court finds that the ALJ erred when disregarding Saunders's testimony concerning his debilitating pain episodes and objective evidence in Saunders's medical records that reflected these episodes, meaning that the ALJ did not analyze all of the evidence relevant to Saunders's claim.[13] As stated in Saunders's Objection, because of the material omissions regarding Saunders's claims of debilitating back pain, the ALJ did not discuss Saunders's ability to work regularly, (Pl.'s Obj. 3), meaning the ALJ did not resolve whether Saunders could work on a continuing basis. The Court agrees with Saunders that the ALJ did not reconcile Saunders's testimony regarding his pain, the frequency of his debilitating pain episodes, his potential for

---

[13] In response to Saunders's Objection, the Commissioner asserts that "substantial evidence supports the ALJ's implicit finding—through assessing an RFC—that Plaintiff could sustain work-related functions despite periods of exacerbated pain." (Resp. 4, ECF No. 14.) An *implicit* finding does not permit this Court to engage in a meaningful review on appeal because the Court cannot understand the ALJ's decision making process. Rather, the ALJ must address the relevant evidence concerning Saunders's back pain and ability to function while in a pain episode and provide explicit findings to that effect.

absenteeism from work, and the medical records that document his statements to various medical providers regarding how his pain affects his daily activities. Because the record does not make clear how the ALJ weighed the evidence relating to Saunders's pain episodes, the Court cannot determine whether the ALJ analyzed all of the evidence relevant to Saunders's disability claim. As a result, the Court cannot find that substantial evidence supports the Commissioner's decision to deny benefits based on Saunders's degenerative disc disease and related back pain.

### B. The ALJ Misstated the *Bird* Standard When Considering the Veterans Administrations One Hundred Percent Disability Rating for Saunders and did not Persuasively and Specifically Explain her Reason to Deviate from the <u>Substantial Weight Normally Accorded to that Decision</u>

In addition to the evidentiary concerns regarding Saunders's debilitating pain episodes, the ALJ also mischaracterized the legal standard that must be applied to the Veterans Administration rating of Saunders's one hundred percent disability pursuant to Fourth Circuit precedent in *Bird*.[14] This misstatement of law further compounds the errors regarding Saunders's testimony and the evidence regarding his pain episodes.

The ALJ mis-paraphrased the *Bird* standard as requiring only that decisions from other agencies "deserve substantial weight unless there are good reasons for giving them less weight." (R. 24.) But *Bird* requires more: not merely good reasons for disregarding the disability rating, but evidence that *clearly demonstrates* the ALJ should deviate from the one hundred percent disability rating that the Veterans Administration afforded to Saunders. *Bird*, 699 F.3d at 343. *Bird* requires this because "the purpose and evaluation methodology" of the Social Security

---

[14] The Veterans Administration initially determined that Saunders had a ninety percent service connected disability beginning April 1, 2011. (R. 170.) The Veterans Administration increased his disability rating to one hundred percent, effective May 31, 2016, and revised his date of individual unemployability to July 14, 2012. (R. 165, 170.) In comparison, Saunders's claim for Social Security Disability benefits alleged an onset date of November 22, 2015.

Administration and the Veterans Administration disability determinations are "closely related." *Id*. Accordingly, "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* To demonstrate that it is appropriate to accord less than "substantial weight" to a disability decision from another agency such as the Veterans Administration, "an ALJ must give persuasive, specific, valid reasons for doing so that are supported by the record." *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018) (internal quotation marks and citations omitted).

Here, the R&R recognized that the ALJ misapplied the standard set forth in *Bird* to the Veterans Administrations one hundred percent disability rating for Saunders but ultimately concluded that such error resulted in no harm. The R&R explained, "the Commissioner may afford a [Veterans Administration] determination less-than-substantial weight if 'the record before the ALJ *clearly demonstrates* that such a deviation is appropriate.'" (R&R 32.) But the Fourth Circuit requires an ALJ to give persuasive, specific, and valid reasons before deviating from affording the determination substantial weight, which the record must support.[15] *Woods*, 888 F.3d at 692. For example, an ALJ "could explain which aspects of the prior agency decision he [or she] finds not credible and why, describe why he [or she] finds other evidence more credible, and discuss the effect of any new evidence made available after [the other agency] issued its decision." *Id.*

The ALJ's opinion provided the following explanation when deciding to accord "little weight" to the Veterans Administration rating:

> The undersigned accords little weight to this decision as inconsistent with the medical evidence of record as a whole, which does not support disabling

---

[15] The Fourth Circuit issued its opinion in *Woods* on April 26, 2018—one month after the ALJ issued her written decision—but before the Appeals Council acted on Saunders's request for review. (R. 1–6, 27.)

limitations. The claimant has some obvious limitations but not debilitating. He continues to perform numerous robust activities of daily living and as described in further detail below, given the limitations in the claimant's residual functional capacity, the vocational expert testified that he is capable of performing his past relevant work. Hence, despite his limitations, in light of his activities of daily living, his symptoms are not work preclusive.

(R. 24.) This generic explanation is neither persuasive nor specific. In particular, it does not address Saunders's primary claim that, at times, he cannot function on account of his pain episodes. (Pl.'s Obj. 6–7.) Nor does it mention the findings of fact or conclusions of law in the written opinion that the Veterans Law Judge from the Board of Veterans' Appeals issued on October 20, 2016. (R. 211–26.)

For instance, the underlying record shows that the Veterans Administration rated Saunders one hundred percent disabled because of "incapacitating episodes due to intervertebral disc syndrome" and a "lumbar spine disability [that] have more nearly approximated incapacitating episodes having a total duration of at least 6 weeks during the past 12 months." (R. 211.) The ALJ made no mention of these factual findings in her opinion, (*see* R. 20–27), and did not discuss the specific finding that Saunders's pain episodes lasted for roughly six weeks per year. Moreover, the ALJ does not explain her decision to disregard the vocational expert's testimony regarding a claimant's inability to obtain employment, who, like Saunders, may experience several absences and "be off-task 15 percent of the day in addition to regular breaks." (R. 81.) Rather, the ALJ stated that she "accords little weight to the [Veterans Administration] decision as inconsistent with the medical evidence of record as a whole, which does not support disabling limitations," (R. 24), and appears to censure Saunders for engaging in any activities that are not consistent with such limitations. But this does not explain what, in particular, the ALJ found not credible in the Veterans Administration opinion, nor does it specifically address

the highly relevant factual findings in that agency's disability determination regarding Saunders's debilitating back pain.[16]

Because the ALJ accorded "little weight" and did not adequately explain her decision to deviate from the substantial weight otherwise afforded the Veterans Administration rating (a rating assigned by an administrative law judge of a fellow agency), this Court cannot engage in a meaningful review. *See Woods*, 888 F.3d at 692. The misapplication of the *Bird* standard further supports remanding this case to the Commissioner.

---

[16] The R&R found harmless the misapplication of the *Bird* standard because the "ALJ specified that the [Veterans Administration]'s determination conflicted with [Saunders's] reported daily activities, which the ALJ characterized as 'robust.'" (R&R 35.) The R&R further notes that the ALJ found that Saunders "responded well to conservative treatments." (R&R 35.) And the R&R reflected that the ALJ considered that Saunders's "reported daily activities also conflicted with the [Veterans Administration]'s disability determination." (R&R 36.) Because Saunders could function at least part of the time during the relevant period, the R&R concluded that Saunders maintained "greater functional capacity than the [Veterans Administration] endorsed." (R&R 36.) But none of these findings address Saunders's ability or inability to function during one of his recurring pain episodes, which Saunders described consistently to various medical providers over the relevant period, and is one of the primary reasons the Veterans Administration rated him one hundred percent disabled.

## III.  CONCLUSION

For the reasons stated, the Court REJECTS the Report and Recommendation and

REMANDS this case to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for

further consideration consistent with this Opinion.  On remand the ALJ must consider (1) all

relevant evidence as it pertains to Saunders's claims of debilitating back pain episodes and his

ability to work on a continuing basis; and, (2) apply the correct legal standard as set forth in *Bird*,

699 F.3d at 342–43, and explained in *Woods*, 888 F.3d at 692.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: Jan. 8, 2020
Richmond, Virginia

27